UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARILYN CORNELIUS,

                              Plaintiff,

                  v.

WALMART,

                              Defendant.
_____

REPORT
and
RECOMMENDATION
----------------------------
DECISION
and
ORDER

21-CV-511JLS(F)

APPEARANCES:        MARILYN CORNELIUS, *Pro Se*
                    Box 692
                    Buffalo, New York  14205-0692

                    WIGGIN and DANA LLP
                    Attorneys for Defendant
                    LAWRENCE DAVIE PIEKES, of Counsel
                    281 Tresser Boulevard
                    Stamford, Connecticut  06901

## **JURISDICTION**

This case was referred to the undersigned by Hon. John L. Sinatra, Jr., on

August 30, 2021, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendant's motions to dismiss (Dkt. 11), filed August 27, 2021, and to strike (Dkt. 22),

filed March 7, 2022.[1]

_____

[1] Although Defendant's motion to dismiss is dispositive, whereas Defendant's motion to strike is non-dispositive, the court addresses both motions together in this combined Report and Recommendation/ Decision and Order in the interest of judicial economy.  *See Mendez v. Barlow*, 2008 WL 2039499, at * 6 (W.D.N.Y. May 12, 2008) (treating motion to strike response in opposition to motion to amend as untimely filed as nondispositive).

**BACKGROUND**

Plaintiff Marilyn Cornelius ("Plaintiff"), a 61 year old African-American woman proceeding *pro se*,[2] commenced this action alleging against Defendant Walmart ("Defendant"), employment discrimination based on race, color, sex and age in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). On August 27, 2021, Defendant filed a motion to dismiss for failure to state a claim (Dkt. 11) ("Motion to Dismiss"), attaching the Memorandum of Law in Support of Defendant's Motion to Dismiss. A scheduling order entered September 13, 2021 (Dkt. 15) ("Scheduling Order"), set October 13, 2021 as the deadline for Plaintiff to respond in opposition to Defendant's Motion to Dismiss, and October 28, 2021 as the deadline for Defendant to file any reply in further support of dismissal. Plaintiff, however, without seeking leave to extend the deadline for filing a response, filed on February 18, 2022 a Notice of Motion in Opposition of Motion to Dismiss (Dkt. 17) ("Plaintiff's Response"). Because the deadline for filing a reply had expired, Defendant, on February 28, 2022, moved for an extension of time to file a reply (Dkt. 19), which was granted by Text Order entered February 28, 2022 (Dkt. 21). Accordingly, on March 7, 2022, Defendant filed a Motion to Strike (Dkt. 22) ("Motion to Strike"), attaching the Declaration of Counsel [Lawrence David Piekes][3] in Support of Motion to Strike Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 22-1) ("Piekes' Declaration"), with exhibits A and B

---

[2] Plaintiff's motion to proceed *in forma pauperis* (Dkt. 4) was denied by Decision and Order filed May 19, 2021 (Dkt. 6), and Plaintiff paid the filing fee on June 4, 2021.
[3] Unless otherwise indicated, bracketed text has been added.

(Dkts. 22-2 and 22-3) ("Defendant's Exh(s). __"), and the Memorandum of Law in Support of Motion to Strike Plaintiff's Late Opposition and Reply in Further Support of Defendant's Motion to Dismiss (Dkt. 22-4) ("Defendant's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion to Dismiss should be GRANTED; Plaintiff's Motion to Strike is DENIED.


**FACTS**[4]

Plaintiff Marilyn Cornelius ("Plaintiff" or "Cornelius"), an African-American woman, age 61, commenced working in August 2018, as an assistant manager for Defendant Walmart ("Defendant" or "Walmart"), at Defendant's store in Amherst, New York ("Amherst store"), where Plaintiff was the oldest assistant manager.  Plaintiff maintains that upon commencing working for Defendant, she was subjected to a hostile work environment including being "spoken to in an abrasive manner by subordinates and management."  Discrimination Charge at 1 (Dkt. 1 at 8).  While assigned to the Amherst store, Plaintiff made numerous complaints to Amherst store managers Rhonda, and Chris L., as well as co-managers Eric and Derrick, about disrespectful and discriminatory treatment by support manager Syed, assistant managers James, Shana, Hanna, and co-manager Lori, but her complaints and concerns were ignored and the treatment continued.  Plaintiff claims she "was denied equal terms, conditions and privileges of employment afforded younger, non-Black and male employees."  *Id*. at 2

---

[4] Taken from the Complaint filed in this action, including the Charge of Discrimination Plaintiff filed with the New York State Division of Human Rights, which is both referenced in, Complaint ¶ 19, and attached to the Complaint.

(Dkt. 1 at 9). In November 2019, Plaintiff returned from a leave of absence ("LOA"), and was transferred from the Amherst Store to Defendant's store in Cheektowaga, New York ("Cheektowaga store"), despite being told by the Amherst store manager, Chris Lazarou ("Lazarou"), that Plaintiff would resume her assistant manager position at the Amherst store upon returning from the LOA. Plaintiff was not provided any reason for the transfer and then commenced working at Defendant's Cheektowaga store.

At the Cheektowaga store, Plaintiff again was the oldest assistant manager and again was treated badly, complained about the treatment, "but no action was taken to correct the hostile work environment." Discrimination Charge at 2 (Dkt. 1 at 9). In July 2020, pictures were taken of each assistant store manager, co-manager, and the store manager at the Cheektowaga store and posted on the wall outside the office in preparation for inventory. Although Plaintiff was then an assistant manager at the Cheektowaga store, her picture was not taken, and Plaintiff maintains Defendant's failure to take Plaintiff's picture for inclusion in the wall display was intended to send a "subliminal message" that Plaintiff was not accepted and respected, causing Plaintiff to be embarrassed and humiliated.

On October 10, 2020, and November 9, 2020, Plaintiff was verbally disciplined ("disciplinary actions"), by Cheektowaga store manager Christopher Knowlin, Sr. ("Knowlin"), and Cheektowaga store lead Mornalisa Ferrette ("Ferrette"), but neither Knowlin nor Ferrette told Plaintiff the conversations were considered disciplinary actions. The October 10, 2020 disciplinary action was considered a "yellow disciplinary action" which Plaintiff maintains was drafted on September 17, 2020, while Plaintiff was on an approved short-term Family Medical Leave Act ("FMLA") LOA, with Plaintiff's

4

assistant manager position protected through October 13, 2020.  Plaintiff asserts she was subjected to the yellow disciplinary action in retaliation for taking the approved FMLA LOA and "communicating to Store Manager and Store Lead that the actions taken against [Plaintiff] were in violation of Federal FMLA laws and because [Plaintiff] also complained about discriminatory treatment."  Disciplinary Charge at 2 (Dkt. 1 at 9).

When Plaintiff returned to work on October 10, 2020, she was told she would begin working overnight shifts on October 19, 2020, a shift Plaintiff had never worked as an assistant manager at Walmart.  Plaintiff was also assigned to work with one Miguel Martinez ("Martinez").  Plaintiff had previously complained to the Cheektowaga store lead that on July 27, 2020, equipment Plaintiff had signed out to use was taken by Martinez who hid it in the office, a complaint that was confirmed by security video.  The store lead also informed Plaintiff she observed Martinez with a picture of Plaintiff, which made Plaintiff uncomfortable.  The store lead said she would talk with Martinez and follow up with Plaintiff, but never did.  On October 25, 2020, after working the overnight shift for only three days, Plaintiff was assigned "to run the entire overnight process" by herself, but was not provided any instructions, including written notes, e-mails, texts, or phone calls by the Cheektowaga store manager or store lead as was done for Martinez. Discrimination Charge at 3 (Dkt. 1 at 10).  When Plaintiff arrived at the Cheektowaga store on October 25, 2020, there was freight stacked in the store where groceries were sold, as well as unorganized freight in the hardware aisles and across the hardware section's back walls, with no support manager on staff.  Without any instructions regarding how the freight should be "worked," Plaintiff decided to "work the live freight"[5]

---

[5] What qualifies as "live freight" is not described in the record.

with which she was familiar.  *Id.*  The next morning, Cheektowaga store lead Ferrette asked Plaintiff if she worked the "GM" freight,[6] and Plaintiff responded she worked the live freight but because Plaintiff had no notes regarding the GM freight so she had two associates place the unworked freight, neatly, in the GM receiving area.  *Id.*  Plaihntiff offered to show Ferrette pictures of the work that was done overnight but Ferrette did not want to see them.

On November 7, 2020, Plaintiff reported to the Cheektowaga store to work the overnight shift, but after working the shift for two hours, Plaintiff learned she had been transferred back to a day shift, a shift change of which Plaintiff had not been informed by either the store manager or store lead before Plaintiff started working the overnight shift on November 7, 2020.  On November 9, 2020, Cheektowaga store manager Knowlin advised Plaintiff she was being subjected to an orange disciplinary action. Plaintiff claims she was subjected to the orange disciplinary action for matters beyond her control[7] and that other overnight managers were not disciplined for similar situations, including one William Roman who was disrespectful toward senior level store management and associates.  According to Plaintiff, Knowlin sent an e-mail advising that insurance would not reimburse Defendant for any merchandise not "binned into the trailer(s), had it been stolen," and that the responsible store employee would be disciplined.  Discrimination Charge at 4 (Dkt. 1 at 11).  Plaintiff further maintains the disciplinary actions were intended to force Plaintiff to resign or to provide a reason supporting Defendant's future termination of Plaintiff's employment.

---

[6] "GM" freight is not defined in the record.

[7] Although Plaintiff does not allege the basis for the disciplinary action, the context suggests the orange disciplinary action was related to Plaintiff's failure to fully 'work' all the freight during the October 25, 2020 night shift.

On December 17, 2020, Plaintiff informed her direct supervisor, store lead Ferrette, that Plaintiff was ill and would be absent from work.  Ferrette told Plaintiff she needed to send documentation of her illness to Knowlin and Plaintiff complied.  When Plaintiff returned to work on January 19, 2021, several store employees told Plaintiff they heard Plaintiff's absence was attributed to infection with COVID-19.  On January 20, 2021, Martinez welcomed Plaintiff back to work, advising Ferrette told him Plaintiff had COVID-19.  Plaintiff sent Ferrette a text message ("text message") inquiring whether Ferrette told Martinez Plaintiff had COVID-19, but Ferrette did not respond.  On January 25, 2021, Plaintiff confronted Ferrette in person at work, asking whether Ferrette received the text message, but Ferrette responded she was angry because Plaintiff also sent the text message to Martinez and asked if Plaintiff was aware of the context in which Ferrette told Martinez that Plaintiff had COVID-19, but another employee interrupted the conversation which was not continued.

On March 4, 2021, Plaintiff received a poor performance evaluation by Knowlin.  Ferrette was also present at Plaintiff's performance evaluation, which Plaintiff maintains was "a complete fabrication," but Ferrette did not offer a contrasting review.  Discrimination Charge at 5 (Dkt. 1 at 12).  Plaintiff alleges the negative performance review was intended to force Plaintiff to take a lower position or have her employment terminated.  On March 18, 2021, Plaintiff filed an administrative claim with New York State Division of Human Rights ("NYSDHR") alleging race, color, sex and age-based employment discrimination in the form of disparate treatment, hostile work environment, and retaliation in violation of Title VII and the ADEA.

During her tenure with Defendant, Plaintiff claims she was not allowed to decide which associates would fill department vacancies, and was only allowed to hire two associates, one at the Amherst store and one at the Cheektowaga store.  Plaintiff further maintains unidentified managers have engaged in inappropriate intimate relationships and conversations with unidentified subordinates, but instead of being reprimanded for such conduct, the managers were promoted.  Plaintiff remained employed by Defendant at least through August 27, 2021, when Defendant filed the Motion to Dismiss.  Defendant's Memorandum at 1.[8]

## **DISCUSSION**

### 1.    **Failure to State a Claim**

A complaint must be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  As such, the Supreme Court requires application of "a 'plausibility standard . . . .'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept

---

[8] To date, nothing in the record indicates or even suggests Plaintiff's employment with Defendant has been terminated.

as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  *Id.* (quoting *Twombly*, 550 U.S. at 557)

A Rule 12(b)(6) motion is addressed to the face of the pleading.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]."  *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

### A.    Defendant's Motion to Strike

Preliminarily, the court addresses Defendant's Motion to Strike Plaintiff's Response in opposition to Defendant's Motion to Dismiss as untimely filed.  Defendant argues Plaintiff's Response should be stricken as untimely because it was filed more than four months after the deadline established by the September 15, 2021 Scheduling Order and without Plaintiff seeking an extension of the filing deadline, Defendant's Reply at 1-2, nor has Plaintiff asserted any good cause for extending the deadline.  *Id*. at 2-3.  Although Plaintiff was given an opportunity to respond in opposition to the Motion to Strike, March 9, 2022 Text Order (Dkt. 23) (setting March 21, 2022 as Plaintiff's deadline to respond in opposition to Defendant's Motion to Strike), Plaintiff has not done so.

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."  *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing cases including*, inter alia*, *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("[P]ro se litigants may in general deserve more lenient treatment than those represented by counsel.")).  This special solicitude includes liberal construction of pleadings and motion papers, "relaxation of the limitations on the amendment of pleadings," *id*., and "'leniency in the enforcement of other procedural rules.'"  *Id*. (citing *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980), and quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001), and *Enron Oil Corp. v. Diahuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ("A party appearing without counsel is afforded

extra leeway in meeting the procedural rules governing litigation . . . .")).  Further, "trial judges must make some effort to protect a party [proceeding *pro se*] from waiving a right to be heard because of his or her lack of legal knowledge."  *Id*. (quoting *Enron Oil Corp*., 10 F.3d at 96 (bracketed material in *Tracy*)).  Because "the exact degree" of special solicitude to be afforded a *pro se* litigant depends "upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant," the Second Circuit has not established "an exhaustive list of the relevant considerations" regarding the degree of special solicitude, but instead instructs district courts to "exercise their discretion in such cases, subject to review for its abuse . . . ."  *Tracy*, 623 F.3d at 102-03.

In the instant case, although Plaintiff did file Plaintiff's Response in opposition to Defendant's Motion to Dismiss on February 18, 2022, *i.e.*, more than four months after the October 13, 2021 deadline established by the September 13, 2021 Scheduling Order, the court finds the relevant circumstances point against striking Plaintiff's Response.  In particular, nothing in the record indicates Plaintiff is an experienced litigator, *pro se* or otherwise, such that there is no basis to find Plaintiff is familiar with the procedural requirements or consequences of failing to abide by such requirements. *See Tracy*, 623 F.3d at 103-04 (vacating the district court's withdrawal of special solicitude from *pro se* plaintiff for the remainder of the action where there were no "substantial indications that a litigant is fully aware of the requirements of the stage of litigation at issue. . . .").   Accordingly, although the court does not condone Plaintiff's belated and unexcused delay in filing Plaintiff's Response in opposition to Defendant's

Motion to Dismiss, because nothing, including Plaintiff's papers, indicates Plaintiff is sufficiently familiar with litigation requirements, Defendant's Motion to Strike is DENIED.

### B.    Defendant's Motion to Dismiss

Defendant moves pursuant to Rule 12(b)(6) to dismiss the Complaint for failing to state a claim, arguing certain discrete incidents of alleged discriminatory conduct are untimely, Defendant's Memorandum at 6, Plaintiff fails to allege the elements of any claim pursuant to Title VII, *id*. at 7-12, the ADEA, *id*. at 12-13, retaliation, *id*. at 13-15, and Plaintiff's parallel NYSHRL disparate treatment and retaliation claims fail for the same reasons as the Title VII and ADEA claims.  *Id*. at 15-18.  In opposition to dismissal, Plaintiff globally refutes each of Defendant's arguments, Plaintiff's Response, *passim*, and asserts new factual allegations in support of her employment discrimination claims including reduced salary, denial of higher position, and ineligibility for bonuses, and loss of paid time off.  *Id*. at 2, 5.  In further support of the Motion to Dismiss, Defendant, in addition to moving to strike Plaintiff's Response, alternatively argues the court should reject Plaintiff's additional factual allegations, asserted for the first time in Plaintiff's Response, which essentially seek to amend the Complaint in opposing the Motion to Dismiss, Defendant's Reply at 3-4, and the conclusory assertions Plaintiff makes in opposing dismissal are insufficient to save the Complaint.  *Id*. at 4-6.  Careful consideration of these arguments establish Defendant's Motion to Strike should be GRANTED.

### 1.    Federal Employment Discrimination Claims

Plaintiff claims she was subjected to employment discrimination in the form of disparate treatment based on her race, color, sex and age, a hostile work environment,

and retaliation, in violation of Title VII and the ADEA.  Initially, the court addresses

Defendant's argument, Defendant's Memorandum at 6, that insofar as Plaintiff's

employment discrimination and retaliation claims under federal law are based on

discrete actions, such claims are time-barred if they occurred more than 300 days

before Plaintiff filed her EEOC Discrimination Charge on March 18, 2022, *i.e.*, May 22,

2020, including all of Plaintiff's claims pertaining to her employment at the Amherst

store, as well as Defendant's transfer of Plaintiff to the Cheektowaga store in November

2019.[9]

Insofar as Plaintiff's Title VII and ADEA claims are based on asserted discrete

discriminatory actions that took place before May 22, 2020, they are time-barred.  Both

Title VII and the ADEA require that an employee alleging employment discrimination file

an administrative claim with the Equal Employment Opportunity Commission ("EEOC")

or the applicable state agency, here, New York State Division of Human Rights ("DHR"),

within 300 days of the discriminatory act.  *See Vega v. Hempstead Union Free School

District*, 801 F.3d 72, 78-79 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-5(e)(1)

(establishing the 300-day requirement for Title VII); *Tewksbury v. Ottaway Newspapers*,

192 F.3d 322, 328 (2d Cir. 1999) (citing 29 U.S.C. § 626(d) (establishing the 300-day

requirement for the ADEA)).  With respect to retaliation and discrimination claims, where

the alleged acts are discrete and easy to identify, "[e]ach incident of discrimination and

each retaliatory adverse employment decision constitutes a separable actionable

'unlawful employment practice.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

---

[9] As Defendant maintains, Defendant's Memorandum at 6 n. 2, Plaintiff's employment discrimination claims asserted pursuant to NYSHRL "are not subject to the same 300-day limitation as [Plaintiff's] federal claims," (citing cases), and Defendant accordingly does not move to dismiss Plaintiff's NYSHRL claims as untimely filed.

110, 114 (2002) (differentiating discriminatory and retaliatory acts from hostile work environment claims and holding that applicability of the doctrine "varies with the practice").  It is not sufficient to say only that a set of separate acts were all motivated by the same animus.  *Id.* at 113 ("Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). The continuing violation doctrine cannot save Plaintiff's time-barred discrimination and retaliation claims which are predicated on a series of discrete acts occurring prior to May 22, 2020, although allegations pertaining to such time-barred discrete acts may be considered as circumstantial evidence for timely filed claims.  *Morgan*, 536 U.S. at 114 ("Nor does the statute bar an employee from using the prior [time-barred][10] acts as background evidence in support of a timely claim.").

In contrast, the continuing violation doctrine may be invoked in hostile work environment claims because, unlike discrete acts, "their very nature involves repeated conduct."  *Morgan*, 536 U.S. at 115. In this context, timely acts must be "sufficiently related to acts preceding the limitations period" to constitute a continuing violation. *Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016).  Accordingly, here, the court is not barred from considering the pre-May 22, 2020 acts in considering Plaintiff's hostile work environment claim, although such acts may not be considered in connection with Plaintiff's disparate treatment and retaliation claims.

### a.    Disparate Treatment

"Title VII prohibits an employer from 'taking an adverse employment action' against an individual 'because of such individual's race, color, religion, sex, or national

---

[10] Unless otherwise indicated, bracketed material has been added.

origin.'"  *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (quoting *Vega*, 801

F.3d at 85 (quoting 42 U.S.C. § 2000e–2(a)(1))).  Similarly, the ADEA prohibits

employment discrimination based on an employee's age.  *Estle v. Int'l Bus. Machines*

*Corp.*, 23 F.4th 210, 213 (2d Cir. 2022) (citing 29 U.S.C. § 623).  As relevant here,

Plaintiff, an African-American woman older than age 40 belongs to the protected

classes of race, sex under Title VII, 42 U.S.C. § 2000e-2(a), and age under the ADEA,

29 U.S.C. § 631(a), and Defendant does not argue otherwise.

Both Title VII and ADEA claims are subject to the three-part burden shifting

framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See Vega*, 801 F.3d at 82–83  (Title VII disparate treatment); *Bucalo v. Shelter Island*

*Union Free Sch. Dist.*, 691 F.3d 119, 128-29 (2d Cir. 2012) (ADEA disparate treatment);

*Fu v. Consolidated Edison Co. of New York*, 855 Fed.Appx. 787, 789 (2d Cir. 2021)

("Discrimination claims under both Title VII and the ADEA are analyzed under the

*McDonnell Douglas* burden-shifting framework.").  The *McDonnell Douglas* framework

requires a plaintiff first establish a *prima facie* case of discrimination.  *Vega*, 801 F.3d at

83.  Once the plaintiff satisfies this initial step, the burden then shifts to the defendant to

"'articulate some legitimate, nondiscriminatory reason' for the disparate treatment."  *Id.*

(quoting *McDonnell Douglas*, 411 U.S. at 802).  If a defendant can satisfy this second

step, the burden then "shifts back to the plaintiff to prove that the employer's reason was

in fact pretext for discrimination."  *Id.*  To survive a motion to dismiss, as in the instant

case, however, the Second Circuit "recently clarified that 'while a discrimination

complaint need not allege facts establishing each element of a *prima facie* case of

discrimination to survive a motion to dismiss, ... it must at a minimum assert

nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'" *Giambattista v. Am. Airlines, Inc.*, 584 Fed.Appx. 23, 24 (2d Cir. 2014) (quoting *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir.2014), and citing *Brown v. Daikin Am. Inc.,* 756 F.3d 219, 228-29 n. 10 (2d Cir.2014) (discussing Title VII claims)).

Specifically, to state a claim for employment discrimination under Title VII, Plaintiff must plead Defendant (1) took an adverse employment action against her, and (2) Plaintiff's race, color, or sex was a motivating factor in the adverse employment decision "by alleging 'facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination,'" *Ninying v. New York City Fire Dep't*, 807 Fed.Appx. 112, 114 (2d Cir. 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)), whereas, to defeat a motion to dismiss, an ADEA plaintiff must plausibly allege that she would not have been subjected to an adverse employment action but for her age. *Lively v. WAFRA Inv. Advisory Group, Inc.*, 6 F.4th 293, 303 (2d Cir. 2021). Accordingly, Title VII claims are "materially different" from ADEA claims insofar as a plausible Title VII claim requires Plaintiff allege her race, color, or sex was a "motivating factor" in an adverse employment action, compared to a plausible ADEA claim that requires Plaintiff allege that "but for" her age, she would not have been subjected to the alleged adverse employment action. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 173-74 (2009) (discussing that the antidiscrimination provisions in Title VII and the ADEA are "materially different" with Title VII applying a "more lenient" motivating factor standard and the ADEA requiring "but for" causation). In the instant case, because it is not

disputed that Plaintiff is within the protective ambit of Title VII based on her race, color, and sex, and of the ADEA based on her age, Plaintiff must plausibly allege she was subjected to an adverse employment action to survive Defendant's Motion to Dismiss for which her race, color, or sex was a motivating factor, or her age was the 'but-for' reason.

In support of dismissal, Defendant argues that Plaintiff has failed to allege she was subjected to any adverse employment action, such that Plaintiff has also failed to plead facts attributing any adverse employment action to Plaintiff's race, color, sex or age.  Defendant's Memorandum at 7-9.  The court thus addresses whether Plaintiff has plausibly alleged she was subjected to an adverse employment action.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).  "Examples of a change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  *Sanders v. N.Y.C. Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  "An adverse employment action is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F.Supp.2d 167, 176 (E.D.N.Y. 2013) (quoting *Brown*, 673 F.3d at 150).  In the instant case, Defendant argues that none of the actions about which Plaintiff complains constitutes an adverse employment action under Title

VII or the ADEA.  Defendant's Memorandum at 7-9.  Plaintiff offers no substantive argument in opposition to summary judgment on this point.

Defendant categorizes the actions Plaintiff claims are adverse as "non-tangible employment related actions," Defendant's Memorandum at 7-8, "interpersonal conflicts," *id*. at 7, 8, "non-sequiturs and petty slights," *id*. at 8-9, and "generalized accusations." *Id*. at 8, 9.  Defendant includes in the "non-tangible employment related actions" category Plaintiff's alleged "non-tangible employment related actions including Defendant's assigning Plaintiff from a day shift to a night shift, the yellow and orange disciplinary actions, and the poor job performance review.  Defendant's Memorandum at 7-8.  "'Courts in this circuit have found that reprimands ... and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.'"  *Washington v. Securitas Security Services USA, Inc.*, 2016 WL 6875706, at * 5 (W.D.N.Y. Nov. 22, 2016) (quoting *Dauer v. Verizon Communications, Inc.*, 613 F.Supp.2d 446, 461 (S.D.N.Y. 2009), *vacated on other grounds sub nom.*, *Pucino v. Verizon Wireless Communications, Inc.*, 618 F.3d 112 (2d Cir. 2010)).  Rather, "criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."  *Weeks v. New York State Division of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 442-43 (7th Cir. 1996) (plaintiff's negative job evaluation, without more, does not establish adverse employment action)), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Neither the yellow or orange disciplinary action, nor the poor job performance review constitutes adverse employment actions in the absence of any allegation that such actions were accompanied by a material adverse effect on the terms and conditions of Plaintiff's employment, or resulted in any change in her compensation or responsibilities.  *See Olin v. Rochester City School District*, __ Fed.Appx.3d __; 2022 WL 967707, at * 4 n. 3 (W.D.N.Y. Mar. 31, 2022) (citing *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) ("a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action")).

Nor did Defendant scheduling Plaintiff to work the overnight shift constitute an adverse employment action supporting an employment discrimination claim. *See*, *e.g.*, *Seale v. Madison County*, 929 F.Supp.2d 51, 75 (N.D.N.Y. 2013) (holding an unwanted schedule change does not constitute an adverse employment action); *Nicholls v. Brookdale University Hosp. and Medical Center*, 2005 WL 1521239, at * 31 (E.D.N.Y. June 22, 2005) (holding unfavorable work schedule, representing diminution in prestige and allowing for fewer opportunities to rotate between challenging and less challenging work on a regular basis, did not constitute an adverse employment action), *aff'd*, 205 Fed.Appx. 858 (2d Cir. 2006).  A work schedule change amounts to an adverse employment action for purposes of establishing disparate treatment only where the schedule change implicates a change in duties, compensation, or benefits.  *See*, *e.g.*, *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2014) (assignment of "a disproportionately heavy workload" can constitute an adverse employment action); and *Seale*, 929 F.Supp.2d at 75 ("The inconvenience caused by a change in work location and hours, without an accompanying allegation that such changes amounted to a

demotion, is not enough to meet the definition of an adverse action for purposes of a discrimination claim.").

With regard to Plaintiff's allegations that on only her third time assigned to the overnight shift, freight was delivered to the Cheektowaga store, but Defendant failed to provide Plaintiff with instructions regarding how to "work" the freight, and that Plaintiff had not been trained for such tasks, "employer-provided training is a benefit under Title VII protection," *Ani v. IMI Sys.*, 2002 WL 1888873, at * 6 (S.D.N.Y. Aug. 15, 2002), such that the "[d]enial of training can constitute an adverse employment action where it bears on either plaintiff's opportunity for professional growth and career advancement or directly on plaintiff's compensation." *Hill v. Rayboy-Brauestein*, 467 F.Supp.2d 336, 352 (S.D.N.Y. 2006) (quotation omitted); *see also Little v. NBC*, 210 F.Supp.2d 330, 384 (S.D.N.Y. 2002) (noting "denial of training" may constitute an adverse employment action). In the instant case, Plaintiff also points to no material harm resulting from any failure of Defendant to properly train or instruct Plaintiff regarding how to work the freight. *Hill*, 467 F.Supp.2d at 352-53 (holding no adverse employment action is established where plaintiff employee is unable to demonstrate material harm from alleged denial of training). This allegation thus fails to plausibly state an adverse employment action.

Accordingly, none of the so-called "intangible" actions of which Plaintiff complains constitutes an adverse employment action for purposes of Title VII or the ADEA. Nor do any of the actions Defendant characterizes as "interpersonal conflicts" and "non-sequiturs and petty slights," Defendant's Memorandum at 8-9, qualify as an adverse employment action. These actions include Martinez taking from Plaintiff's cart tools that

Plaintiff had signed out, and possessing Plaintiff's picture, Ferrette's disclosing Plaintiff's COVID-19 diagnosis to Martinez and others, and the failure to take Plaintiff's picture for inclusion in a photo array at the Cheektowaga store.  *Id*. at 8-9.  Significantly, Plaintiff fails to allege any such action was accompanied by any materially adverse effect on the terms and conditions of Plaintiff's employment, or resulted in any change in her compensation or responsibilities.  *Brown*, 673 F.3d at 150; *Sanders*, 361 F.3d at 755. Accordingly, these allegations fail to plausibly allege an employment discrimination claim based on disparate treatment under Title VII or the ADEA.

Similarly, the actions Defendant characterizes as "generalized accusations," including "vague and generalized claims of bad treatment, non-specific double standards, and similarly unspecified instances of being held accountable," Defendant's Memorandum at 9, are not accompanied by any claimed material adverse effect on the terms and conditions of Plaintiff's employment, nor resulted in any change in Plaintiff's compensation or responsibilities.  *Brown*, 673 F.3d at 150; *Sanders*, 361 F.3d at 755. Accordingly, these allegations also fail to plausibly allege the requisite adverse employment action necessary to support a disparate treatment claim based on Plaintiff's race, color, sex or age.

Plaintiff thus has failed to state an employment discrimination claim under Title VII based on her race, color, or sex, or the ADEA based on her age, and Defendant's Motion to Dismiss should be GRANTED as to such claims.

### b.    Hostile Work Environment

Plaintiff alleges that "from the start of my employment I was subjected to a hostile work environment.  I was spoken to in an abrasive manner by subordinates and

management."  Discrimination Charge at 1 (Dkt. 1 at 8).  Defendant argues in support of dismissal that Plaintiff offers only vague and conclusory allegations which are insufficient to state a claim for hostile work environment.  Defendant's Memorandum at 11-12.  Plaintiff makes no substantive argument in opposing Defendant's motion seeking dismissal of this claim.  Plaintiff's Response, *passim*.

"The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII."  *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).  A hostile work environment exists when "the work environment is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . so long as there is a basis for imputing the conduct that created the hostile environment to the employer."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010).  *Accord*, *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (in context of Rule 12(b)(6) motion to dismiss). Moreover, "[i]t is axiomatic that to prevail on a claim of hostile work environment .. ., the plaintiff must establish that the abuse was based on [the protected class]."  *Kaytor*, 609 F.3d at 547.

To state a claim for a hostile work environment in violation of Title VII, and thus under the ADEA, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [membership in a protected

class.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing and quoting *Gregory v. Daly,* 243 F.3d 687, 691–92 (2d Cir. 2001)).  Further, "a work environment's hostility should be assessed based on the 'totality of the circumstances.'"  *Id*. (quoting *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).  "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'"  *Id*. (quoting *Harris*, 510 U.S. at 23).  "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse. . . .'"  *Id*. (citing and quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).  The Second Circuit has "'repeatedly cautioned against setting the bar too high' in this context."  *Id*. (quoting *Terry,* 336 F.3d at 148).  Nevertheless, in the instant case, Plaintiff has failed to plead sufficient facts to satisfy this test.

As stated, Plaintiff's sole allegation in support of her hostile work environment claim is that throughout her employment with Walmart, she has been continuously subjected to a hostile work environment including being "spoken to in an abrasive manner by subordinates and management."  Discrimination Charge at 1 (Dkt. 1 at 8).  Plaintiff's vague reference to being "spoken to in an abrasive manner by subordinates and management," *see* Facts, *supra*, at 3, completely fails to connect any abrasive statements to Plaintiff's membership in a protected class as required.  *Kaytor*, 609 F.3d at 547 (a hostile work environment claim requires the alleged abuse be based on the

plaintiff's membership in a protected class); *Patane*, 508 F.3d at 113 (the environment must be hostile because of the plaintiff's membership in a protected class).  Nor is there any allegation that any work environment Plaintiff perceived as hostile was so severe or pervasive as to alter the conditions of Plaintiff's employment.  *Littlejohn*, 795 F.3d at 321 (citing *Fleming v. MaxMara USA, Inc.,* 371 Fed.Appx. 115, 119 (2d Cir.2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *Davis–Molinia v. Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive), *aff'd,* 488 Fed.Appx. 530 (2d Cir. 2012).  *See also Baron v. Winthrop*, 211 Fed.Appx. 16, 17 (2d Cir. 2006) (series of remarks made by plaintiff's supervisor evidencing bias against women not sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment so as to constitute a hostile work environment); *Bernstein v. New York City Dep't of Educ.*, 2021 WL 4429318, at *11 (S.D.N.Y. Sept. 27, 2021) (dismissing hostile work environment claim based on age where the plaintiff failed to allege the defendants "criticized him in degrading terms based on his age; that they made invidious comments about the age of others; or that defendant or others in his age group were treated differently from those outside their age group."), *aff'd*, 2022 WL 1739609 (2d Cir. May 31, 2022); and *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp.3d 535, 547

(W.D.N.Y. 2016) (vague allegations that co-workers made fun of plaintiff insufficient to plausibly allege hostile work environment).

Accordingly, Plaintiff's hostile work environment claims under both Title VII and the ADEA should be DISMISSED for failing to plausibly state a claim.

### c.    Retaliation

Plaintiff alleges that while employed at the Amherst store, she "complained to store manager Rhonda, Co-Manager Eric, Derrick,[11] Store Manager Chris L. numerous times regarding disrespectful and discriminatory treatment from Support Manager Syed, Assistant Managers James, Shana, Hanna and Co-Manager Lori," but Plaintiff's complaints were ignored, Complaint at 6, and that "she complained about the treatment [she] received, but it continued."  Discriminatory Charge at 1 (Dkt. 1 at 8).  Plaintiff further alleges that the yellow and orange disciplinary actions to which she was subjected were intended as retaliation against Plaintiff for being on a short-term leave under the FMLA, and because Plaintiff complained of discriminatory treatment. Discriminatory Charge at 2 (Dkt. 1 at 9).  Defendant argues in support of dismissal that these allegations are too vague and conclusory to plausibly allege a Title VII or ADEA retaliation claim.  Defendant's Memorandum at 13-15.  As with her other claims, Plaintiff offers no substantive argument in opposition to these claims.  Plaintiff's Response, *passim*.

Under both Title VII and the ADEA, "'for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any

---

[11] The Complaint does not clarify Derrick employee status.

unlawful employment practice.'" *Farooq v. City of New York*, 2022 WL 793117, at *4 (2d Cir. Mar. 16, 2022) (quoting *Vega*, 801 F.3d at 90). "'[A] plaintiff must plausibly plead' causation, i.e., 'a connection between the act and his engagement in protected activity.'" *Id.* (quoting *Vega*, 801 F.3d at 90). Unlike Title VII disparate treatment discrimination claims requiring only that a plaintiff allege membership in a protected class was a motivating factor for discrimination, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). ADEA retaliation claims similarly require pleading but-for causation to avoid dismissal under Rule 12(b)(6). *Lively*, 6 F.4th at 304 (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020)).

The administrative discrimination charge Plaintiff filed with NYSDHR on March 19, 2021 constitutes protected activity. *See Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 210 (2d Cir. 2006) (filing of administrative charge with EEOC complaining of employment discrimination in violation of Title VII and the ADEA was protected activity for purposes of retaliation claim). Informal complaints to management can also constitute protected activity. *See Amin v. Akzo Nobel Chemicals, Inc*., 282 Fed.Appx. 958, 961 (2d Cir. 2008) ("Informal complaints to management as to discrimination on a basis prohibited by Title VII are protected activity."). Plaintiff, however, fails to allege she was subjected to any adverse employment action after filing the administrative claim, and Plaintiff's allegations that she complained to various store managers, assistant managers, and co-managers

about "disrespectful and discriminatory treatment," Complaint ¶ 6, is simply too vague to state a retaliation claim, particularly as Plaintiff does not also attribute any adverse employment action to such complaints.  Further, as discussed above, Discussion, *supra*, at 17-21, Plaintiff has completely failed to allege she was subjected to any adverse employment action at all, much less that her participation in any activity protected under Title VII or the ADEA was the 'but-for' cause of such adverse employment action.  *Farooq*, 2022 WL 793117, at \*4; *Lively*, 6 F.4th at 304. Accordingly, the Complaint fails to state a retaliation claim under Title VII or the ADEA.

Furthermore, insofar as Plaintiff's allegation that she was disciplined in retaliation for taking a short-term leave under the FMLA[12] can be construed as alleging retaliation, for a "complaint to give rise to an inference of retaliation for using FMLA leave, [Plaintiff] needed to plausibly allege that '1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for h[er] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Patel v. NYU Langone Hosps.*, 2021 WL 4852426, at \*3 (2d Cir. Oct. 19, 2021) (quoting *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016)).  As discussed above, Discussion, *supra*, at 18-19, the verbal warnings Plaintiff was given in the form of the yellow and orange disciplinary actions do not qualify as adverse employment actions.  Accordingly, it logically follows that the yellow and orange disciplinary actions cannot have occurred under circumstances giving rise

---

[12] The court observes Plaintiff does not specifically allege any of her employment discrimination claims is asserted pursuant to the FMLA, nor did Plaintiff indicate in her Discriminatory Charge that she was relying on the FMLA as the basis for such administrative complaint.

to an inference of retaliatory intent. Plaintiff thus has failed to plausibly allege a

retaliation claim predicated on the exercise of her right to leave under the FMLA.

Defendant's Motion to Strike therefore should be GRANTED with regard to

Plaintiff's retaliation claims.

### 2.    State Employment Discrimination Claims

### a.    Disparate Treatment and Retaliation Claims

Plaintiff asserts disparate treatment and retaliation claims in violation of NYSHRL

based on the same factual allegations on which Plaintiff's federal claims are based.

Complaint, *passim*. As Defendant argues in support of dismissal, Defendant's

Memorandum at 15, employment discrimination and retaliation claims, whether asserted

under Title VII, the ADEA, or NYSHRL, are analyzed pursuant to the same standard.

*See Mitchell v. New York City Dept. of Education*, 2022 WL 621956, at ** 5-6 (S.D.N.Y.

March 3, 2022) (citing cases, including *Littlejohn*, 795 F.3d at 316 (Title VII retaliation),

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (ADEA retaliation),

*Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (NYSHRL retaliation), *Sassaman v.*

*Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (Title VII disparate treatment), and

*Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 450 n.11 (S.D.N.Y. 2013) (Title

VII, ADEA, and NYSHRL discrimination)). Accordingly, Plaintiff's disparate treatment

and retaliation claims asserted pursuant to the NYSHRL should be dismissed for the

same reasons such claims asserted pursuant to Title VII and the ADEA should be

dismissed.

Defendant's Motion to Dismiss should thus be GRANTED as to Plaintiff's

disparate treatment and retaliation claims asserted under NYSHRL.

b.    **Hostile Work Environment Claim**

With regard to Plaintiff's hostile work environment claim asserted pursuant to

NYSHRL § 296(1)(h), insofar as such claim is asserted prior to the law's amendment on

October 11, 2019, when the New York State Legislature removed the "severe and

pervasive" requirement for claims without retroactive effect, the hostile work

environment claim is analyzed in a manner identical to that for Title VII hostile work

environment claims.  *Summa v. Hofstra University*, 708 F.3d 115, 123-24 (2d Cir. 2013)

(hostile work environment claims subject to same analysis under Title VII and

NYSHRL).  Accordingly, those portions of Plaintiff's NYSHRL hostile work environment

claims attributable to conduct occurring prior to October 11, 2019, should be

DISMISSED for the same reasons the undersigned recommends dismissal of Plaintiff's

that Title VII and ADEA hostile work environment claims.  *See* Discussion, *supra*, at 23-

4.

With regard to Plaintiff's NYSHRL hostile work environment claim attributable to

Defendant's conduct after October 11, 2019, the court applies the amended, "'more

permissive [standard], omitting the requirement that the complained-of conduct be

severe or pervasive.'"  *Friederick v. Passfeed, Inc.*, 2022 WL 992798, at * 6 (S.D.N.Y.

Mar. 31, 2022) (quoting *Moazzaz v. MetLife, Inc.*, 2021 WL 827648, at *8 (S.D.N.Y.

Mar. 4, 2021)).  The court's research has revealed only one case applying the amended

"more permissive standard" for hostile work environment claims under NYSHRL, to wit,

*Black v. ESPN, Inc.*, 139 N.Y.S.3d 523, at *6 (N.Y. Sup. Ct. 2021) (Table), where the

court essentially applied the same standard used to analyze hostile work environment

claims under New York City Human Rights Law ("NYCHRL").  In particular, "[t]o make

out a hostile work environment claim, a plaintiff must allege that she or he has been subjected to inferior terms, conditions, or privileges of employment because of his or her protected status under the [amended] NYSHRL (NY Exec. L. 296[1][h] [applying to claims filed after the amendment's effective date of October 11, 2019]; . . . or she or he has been treated less well than other employees because of her or his protected status." *Id*. (citing cases). Nevertheless, a NYSHRL hostile work environment "claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences." *Id*.

Here, as discussed above, *see* Facts, *supra*, at 3, Plaintiff alleges only that she was subjected to "abrasive" treatment by management and co-workers, and does not claim she was subjected to inferior terms, conditions, or privileges of employment based on Plaintiff's race, color, sex or age. Plaintiff's failure to allege she was subjected to inferior terms, conditions, or privileges of employment based on any such protected class is thus fatal to her NYSHRL hostile work environment claim. Defendant's Motion to Strike should therefore be GRANTED as to this claim.

## 2.    Dismissal Without Prejudice

The dismissal of a plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, although "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the problems with Plaintiff's Complaint, as pleaded, are not substantive such that further pleading cannot cure them.[13] In these circumstance, amendment of the Complaint

---

[13] The court notes some of the putative factual allegations asserted in Plaintiff's Response indicate Plaintiff may have been subjected to adverse employment actions. *See*, *e.g.*, Discussion, *supra*, at 12.

would not necessarily be futile.  Accordingly, the dismissal of the Complaint should be without prejudice and with leave to replead.

## **CONCLUSION**

Based on the foregoing, Defendant's Motion to Dismiss (Dkt. 11), should be GRANTED, and the Complaint should be DISMISSED without prejudice and with leave to replead; Defendant's Motion to Strike (Dkt. 22), is DENIED.


SO ORDERED, as to Defendant's
Motion to Strike.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully submitted, as to Defendant's
Motion to Dismiss,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        July 20th, 2022
                    Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       July 20th, 2022
             Buffalo, New York